*67 OPINION OF THE COURT
Steven W. Fisher, J.
In the two indictments before the court, defendant John Taylor stands charged with murder in the first degree and lesser crimes. As to each indictment, the People have served and filed a notice of intent to seek the death penalty. By an order dated March 27, 2002, the two indictments were consolidated for trial (see People v Taylor, decision on People’s Motion No. 1).
The defendant now moves for an order precluding both the removal for cause of prospective jurors with conscientious opinions against the death penalty and the voir dire of prospective jurors aimed at discerning such opinions.
In the alternative, the defendant seeks an order directing that separate juries be impaneled, the first to determine guilt at trial, the second to determine sentence in the event that the defendant is convicted of first degree murder. With respect to the “guilt phase” jury, the defendant asks (1) that prospective jurors not be removable for cause on the basis of conscientious opinions against the death penalty and not be questioned in voir dire on that subject, and (2) that prospective jurors be removable for cause only if their opinions would preclude them from impartially determining guilt and that they be questioned in voir dire on that subject only to the extent of being asked whether they maintain such opinions. With respect to the “sentencing phase” jury, the defendant asks (1) that prospective jurors be subject to voir dire about their opinions concerning the death penalty and removable for cause under the standard set forth in CPL 270.20, and (2) that the sentencing jury be impaneled either at the conclusion of the trial upon the defendant’s conviction of first degree murder or at the outset of the trial to sit alongside but sequestered from the “guilt phase” jury and to hear only such evidence at trial as would be relevant and admissible on the issue of sentence.
As a further alternative, the defendant seeks an order precluding at the outset of trial both the removal for cause of prospective jurors on the basis of conscientious opinions against the death penalty and the voir dire of prospective jurors on that subject. Under this alternative, prospective jurors would be removable for cause before trial only if their opinions would preclude them from impartially determining guilt and they would be questioned in voir dire on that subject only to the extent of being asked whether they maintain such opinions. In *68 the event the defendant is convicted of first degree murder, the jurors would then be subject to voir dire pursuant to CPL 400.27 (2) with respect to their opinions concerning the death penalty, and would be removable for cause under the standard set forth in CPL 270.20.
In addition, the defendant seeks an order recognizing and declaring that jurors who have “religious or conscientious qualms about or opposition to capital punishment,” not rising to a level justifying a challenge for cause, constitute a “cognizable and distinct group” so that the People would be prohibited from using peremptory challenges “to discriminate against such death-scrupled jurors.”
The defendant further seeks an order denying for-cause challenges against, inter alia, those prospective jurors who express general opposition to, or reservations about, the death penalty, those who say they would allow the possibility of a death sentence to affect their deliberations, those who say that they do not believe that a particular aggravating circumstance that the People intend to prove at trial would warrant the death penalty, those who say that they would not vote for the death penalty if a certain mitigating circumstance were proven, or those who say that they would vote for the death penalty only in a limited category of cases. In addition, the defendant would have the order prohibit the prosecutor from questioning prospective jurors as to whether they could impose the death penalty under the particular aggravating and mitigating circumstances of the case, and from asking prospective jurors to commit to vote for the death penalty.
In People v Harris (98 NY2d 452), the Court of Appeals considered several issues related to jury selection in New York capital cases. The Court first observed generally that “[p]respective jurors whose views on the death penalty are such that they would be committed, before trial has begun, to vote either for or against the death penalty, regardless of facts that might emerge in the course of the proceedings, are excludable for cause * * * .” (Id. at 477 [citations omitted].) Moreover, the Court upheld the statutes prescribing “death qualification” of prospective jurors at the outset of trial. The Court wrote:
“Death qualification at the beginning of the trial is designed to serve the state’s ‘concededly legitimate interest in obtaining a single jury that can properly and impartially apply the law to the facts of the case at both the guilt and sentencing phases of a capital trial’.” (Id. at 479, quoting Lockhart v McCree, 476 US 162, 175-176.)
*69 “The simple fact remains that the State has a valid interest in excluding jurors from a capital trial whose views on the death penalty (whatever they may be) render them unable to perform their sworn duty to try the entire case free of prejudice.” (Id. at 480-481.)
The Court further rejected the contention that “death qualification” itself, or the refusal to postpone it until after conviction, violates a capital defendant’s constitutional rights. Thus, to the extent that the defendant here seeks to eliminate or delay “death qualification” of prospective jurors at his trial, his motion must be denied.
Moreover, in discussing the appropriate standard for a challenge for cause under CPL 270.20 (1) (f), based upon a prospective juror’s views on the death penalty, the Court wrote:
“Where jurors express conscientious views concerning the death penalty yet still make clear that they are able to follow their oaths to act impartially, they cannot be excluded for cause from participating on the jury. But where jurors express an inability to set aside their personal views on the death penalty in deference to the court’s instructions, their judgment is substantially impaired to a degree that it ‘precludes [them] from rendering an impartial verdict or from properly exercising [their] discretion’ under CPL 400.27 [and therefore may be removed for cause]” (People v Harris, supra at 484-485).
It is my intention to apply that standard and, to the extent that the defendant now asks that a different criterion be applied with respect to jurors who have qualms, reservations, or other pertinent views on the death penalty, his motion must be denied.
Additionally, the Harris Court examined an argument, much like the one advanced by the defendant here, that it is improper for a prosecutor in voir dire to ask prospective jurors about their attitudes toward the specific aggravating factors charged in the case, and for the trial judge to grant for-cause challenges based upon answers given to such questions. The Court wrote:
“Defendant questions the prosecution’s tactic of focusing on the aggravating facts of this particular case and the trial court’s granting of the People’s for-cause challenges against jurors who had expressed that, while they could conceive of a case *70 warranting the imposition of the death penalty, they would be unable to impose the death penalty under the circumstances of this particular case. Because the entire statutory and constitutional line of inquiry is directed toward determining whether a juror’s attitude for or against the death penalty would affect that person’s capability to sit fairly in the case at hand, it necessarily follows that the inquiry properly focused on the jurors’ views as they related to the case at hand, not merely in the abstract. Thus, the trial court properly required the jurors to be able to impartially consider the penalty ‘in this case.’ ” (People v Harris, supra at 485 n 11.)
Thus, to the extent that the defendant seeks to prevent the prosecutor from questioning prospective jurors as to whether they could impose the death penalty under the particular aggravating and mitigating circumstances of the case, his motion must be denied. As for asking jurors to commit to vote for the death penalty, I will not allow either side in voir dire to ask jurors to commit to anything other than following the law.
Finally, the defendant’s request for a declaration that jurors who have “religious or conscientious qualms about or opposition to capital punishment,” not rising to a level justifying a challenge for cause, constitute a “cognizable and distinct group” protected against the prosecutor’s exercise of peremptory challenges is without support in law.
The defendant correctly contends that Batson v Kentucky (476 US 79 [1986]) and its progeny prohibit the use of peremptory challenges to remove jurors solely on account of their membership in a constitutionally cognizable group defined by such factors as race (id.), ethnicity (see Hernandez v New York, 500 US 352 [1991] [Hispanics]), gender (see J.E.B. v Alabama ex rel. T.B., 511 US 127 [1994]), or religion (see People v Langston, 167 Misc 2d 400 [Sup Ct, Queens County 1996, Buchter, J.]). Nevertheless, a prima facie case of such invidious discrimination may be successfully rebutted by a neutral explanation for the disputed peremptory challenge that is “related to the particular case to be tried” (Batson v Kentucky, 476 US at 98).
Plainly, a juror’s expressed “qualms about or opposition to capital punishment” is directly related to the trial of a capital case. Thus, in the Batson context, it would hardly be appropriate to recognize as a protected group those who hold views that *71 would, in and of themselves, justify the exercise of a peremptory challenge.
Accordingly, the defendant’s motion should be granted to the extent of prohibiting the prosecutor from asking prospective jurors to commit to voting for the death penalty. In all other respects, the motion should be denied.